IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KRISTA JOSEPH, St. Johns County
Commissioner,

        Plaintiff,

v.　　　　　　　　　　　　　　　　　Case No.

ST. JOHNS COUNTY BOARD OF
COUNTY COMMISSIONERS; and
R.J. LARIZZA, State Attorney for the
Seventh Judicial District of Florida,

        Defendant.
_____/

COMPLAINT
DECLARATORY RELIEF REQUESTED

COMES NOW, Krista Joseph, and complains and alleges against the defendants as follows.

1. This is an action for declaratory judgment under 28 U.S.C. § 2201 to clarify that Commissioner Krista Joseph, an elected commissioner of the St. Johns County Board of County Commissioners, has the First Amendment right to speak on matters of political concern in St. Johns County. This action is necessary because Commissioner Joseph faces a credible threat of criminal prosecution for speaking on political matters. She made a speech arguably touching on political matters at a meeting of the Board of County

1

Commissioners on November 21, 2023. The Board of County Commissioners engaged outside counsel to determine whether Commissioner Joseph committed criminal election interference by making that speech, and outside counsel determined that her speech indeed constituted criminal election interference. Outside counsel prepared a written opinion noting that the matter may be referred to the State Attorney for consideration of criminal charges. Commissioner Joseph wishes to speak on matters of political concern to residents of St. Johns County in the months leading up to the August 2024 primary election. However, the threat of criminal prosecution is sufficient to chill her political speech.

## PARTIES, JURISDICTION & VENUE

2. The plaintiff is Commissioner Krista Joseph. Commissioner Joseph is an elected commissioner of the County Commission of St. Johns County, Florida.

3. The St. Johns County Board of County Commissioners is a subdivision of the State of Florida. The St. Johns County Board of County Commissioners is the entity with the greatest interest in supporting the opinion of outside counsel in this matter and the entity most likely to refer this matter to the State Attorney for consideration of criminal charges against Commissioner Joseph.

4. R.J. Larizza is the State Attorney of the Seventh Judicial Circuit of the State of Florida. He is the officer with authority to initiate a criminal prosecution of Commissioner Joseph for her political speech.

5. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the Constitution and laws of the United States. This Court additionally has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1343 because this is an action to redress the deprivation, under color of State law, of a right secured by the Constitution of the United States.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because both defendants reside in this judicial district. Venue is also proper in this judicial district pursuant to § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## CLAIM FOR RELIEF

7. On November 21, 2023, Commissioner Joseph made a speech at the County Commission meeting in which she noted various matters on which St. Johns County residents may be dissatisfied. She then stated that an election was scheduled for August 2024, and that three seats on the County Commission were up for a vote.

8. On December 5, 2023, the County Commission voted to censure Commissioner Joseph for her speech. The County Commission also voted to hire outside counsel to prepare a legal opinion on the question of whether Commissioner Joseph's speech had violated state law.

9. On January 8, 2024, outside counsel sent a letter to the county attorney of St. Johns County concluding that Commissioner Joseph had likely committed criminal election interference in violation of section 104.31(1)(a), Florida Statutes. Outside counsel's opinion concluded with a section headed "options" that noted the matter could be referred to the State Attorney for consideration of a criminal charge.

10. Section 104.31(1)(a) prohibits a county officer, such as Commissioner Joseph, from using her official authority or influence "for the purpose of interfering with an election . . . or coercing or influencing another person's vote or affecting the result thereof."

11. The flush language of section 104.31(1) further provides that "[t]he provisions of paragraph (a) shall not be construed so as to limit the political activity in [an election], of elected officials . . . of any county . . . ."

12. In 1978, the Florida Attorney General issued Opinion 1978-133 and construed section 104.31(1)(a) "to require a corrupt intent as an element of the criminal offenses embraced by its terms." This is because the purpose

4

of the statute is "to prevent <u>corruption</u> of the election process, not to limit protected political speech by public officers." The Attorney General therefore concluded "that the affixing of a public officer's official title to an open letter or newsletter criticizing or endorsing another person's candidacy does not, [per se] or standing alone, violate § 104.31(1)(a) since such conduct does not itself evince a corrupt use of official authority or influence for the purpose of interfering with an election, or coercing or influencing votes, or affecting the result of an election." The Attorney General also explained that § 104.31(1)(a), "as construed in this opinion, does not appear to infringe upon any constitutionally protected political speech which may be engaged in by such officers."

13. Counsel for Commissioner Joseph provided a copy of Attorney General Opinion 1978-133 to outside counsel for the Board of County Commissioners on December 18, 2023.

14. Outside counsel's legal opinion of January 8, 2024, concludes that it is "undeniable that Commissioner Joseph was using 'her official authority or influence' to make the election-related comments on November 21, 2023." This was because "the only reason she could speak during the 'Commissioners' Reports' was due to her position as County Commissioner."

5

15. The logical import of this analysis is that Commissioner Joseph used her official authority or influence because those who heard her comments were aware of her position as a county commissioner.

16. Under this analysis, Commissioner Joseph would equally use her official authority or influence by writing an open letter or newsletter that identified her as holding the position of county commissioner or by making a public speech in which she was identified as holding the position of county commissioner.

17. Section 104.31 contains no statutory language distinguishing between uses of official authority or influence during a meeting of a board of county commissioners, on the one hand, and uses of official authority or influence in other contexts, on the other hand.

18. Outside counsel's legal opinion of January 8, 2024, found that Commissioner Joseph's speech on November 21, 2023, impermissibly sought to influence an election in violation of § 104.31(1)(a) because the "unmistakable purpose of her comments was to encourage voting out the Incumbent Commissioners."

19. While outside counsel's legal opinion does not discuss Attorney General Opinion 1978-133, outside counsel's legal opinion obviously rejects

the construction of § 104.31(1)(a) set out in Attorney General Opinion 1978-133.

20. Accordingly, under the legal opinion of outside counsel for the Board of County Commissioners, Commissioner Joseph would commit criminal election interference in violation of § 104.31(1)(a) by doing any of the following: (a) stating during a meeting of the Board of County Commissioners that she advocates that voters vote out an incumbent commissioner; (b) stating in a speech at a political rally in which she is identified as a county commissioner that she advocates that voters vote out an incumbent commissioner; and (c) writing in an opinion piece published in a newspaper that she is a county commissioner and she advocates that voters vote out an incumbent commissioner.

21. On information and belief, the St. Johns County Board of County Commissioners agrees with the legal opinion of its outside counsel as described above.

22. On information and belief, State Attorney Larizza agrees with the legal opinion of the outside counsel for the St. Johns County Board of County Commissioners as described above.

23. Commissioner Joseph wishes to make her political views known to the citizens of St. Johns County in connection with the primary election

7

scheduled for August 2024, including her preference that voters vote out incumbent commissioners, in contexts in which she is identified as holding the position of county commissioner.

24. Commissioner Joseph faces a credible threat of criminal prosecution if she speaks on political topics in connection with the August 2024 election, including her preference that voters vote out incumbent commissioners, in contexts in which she is identified as holding the position of county commissioner.

25. This threat of criminal prosecution is sufficient to chill Commissioner Joseph's political speech protected by the First Amendment to the United States Constitution.

26. Commissioner Joseph does not challenge the constitutionality of § 104.31(1)(a) because she believes it is properly construed as set out in Attorney General Opinion 1978-133, and as so construed is consistent with the First Amendment.

27. While Commissioner Joseph believes that § 104.31(1)(a) as properly construed does not conflict with the First Amendment, it is necessary in light of the political calendar to seek a declaration of her First Amendment rights in this Court before § 104.31(1)(a) has been definitively construed by the state courts. If Commissioner Joseph were to seek a

declaratory judgment as to the proper construction of § 104.31(1)(a) in the state courts, litigation over that matter is likely to take significant time. And there is some risk the state courts would agree with the legal opinion of outside counsel for the Board of County Commissioners. In that situation, Commissioner Joseph would be forced to return to this Court to seek a declaration of her First Amendment rights after having lost the opportunity to participate in the political discussion for several months when the political discussion was most relevant.

28. Commissioner Joseph has a First Amendment right to speak freely on political matters, even though she is a county commissioner. Indeed, the First Amendment right of an elected representative to speak freely on questions of government policy was reaffirmed by the U.S. Supreme Court as recently as two years ago, in Houston Community College System v. Wilson, 142 S. Ct. 1253 (2022).

29. Commissioner Joseph contends that she has a federal First Amendment right to make her political views known to the citizens of St. Johns County in connection with the primary election scheduled for August 2024, including her preference that voters vote out incumbent commissioners, in contexts in which she is identified as holding the position of county commissioner.

WHEREFORE, the plaintiff, Commissioner Joseph, respectfully prays for a declaratory judgment that she has a right protected by the First Amendment to the United States Constitution to make her political views known to the citizens of St. Johns County in connection with the primary election scheduled for August 2024, including her preference that voters vote out incumbent commissioners, in contexts in which she is identified as holding the position of county commissioner.

DATED: January 10, 2024.

/s/ W. Bradley Russell
W. Bradley Russell
Florida Bar No. 29492
Russell & Russell, Attorneys at Law, P.A.
6550 St. Augustine Road, Suite 305
Jacksonville, Florida 32217
Tel. 904-527-8813
Email: brad@russellandrussell.law

Lead counsel for Commissioner Joseph