UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KRISTA JOSEPH, St. Johns County Commissioner,

    *Plaintiff*,

v.

BRIAN S. KRAMER, State Attorney for the Eighth Judicial Circuit of Florida,

    *Defendant*.

_____/

Case No. 3:24-cv-35-HES-PDB

**DEFENDANT'S REPLY IN SUPPORT OF
AMENDED MOTION TO DISMISS**

COMES NOW, Defendant, BRIAN S. KRAMER, in his official capacity as State Attorney for the Eighth Judicial Circuit of Florida, and pursuant to this Court's Order, ECF No. 42, hereby submits his Reply in Support of Defendant's Amended Motion to Dismiss.

**ARGUMENT**

**I.     Plaintiff's Speech is Not Entitled to First Amendment Protections.**

Plaintiff's argument that First Amendment precedent governing public employees' speech is inapplicable to elected officials lacks merit. 547 U.S. 410 (2006). In her Response, Plaintiff cites to *Warren v. DeSantis*, 90 F.4th 1115 (11th Cir. 2024), *Bond v. Floyd*, 385 U.S. 116 (1966), and *Houston Community College Sys. v. Wilson*, 142 S. Ct. 1253, 1261 (2022) to suggest that the First Amendment doctrine enumerated in

1

*Garcetti v. Ceballos*, 547 U.S. 410 (2006), does not extend to speech made by "elected officials". ECF No. 38 at 4-7.  Plaintiff is mistaken.

The Response predominantly relies on the Eleventh Circuit's *Garcetti* analysis in *Warren v. DeSantis*;  However, Plaintiff's fervent reliance on *Warren* is misplaced. At the outset, the Eleventh Circuit's *Garcetti* analysis in *Warren* is mere dicta and thus has no persuasive or binding effect on this Court. *See e.g., Rudolph v. United States*, 92 F.4th 1038, 1045 (11th Cir. 2024) ("As a rule, a statement that neither constitutes the holding of a case, nor arises from a part of the opinion that is necessary to the holding of the case is dicta ... [a]nd dicta is not binding on anyone for any purpose.") (quotations omitted).[1]

Unsound precedential value aside, Plaintiff's theory that *Warren* affirmatively established *Garcetti* is inapplicable to elected officials' speech is unfounded. *Id.* at 5.  In reality, the Eleventh Circuit outright "decline[d] to decide that question," 90 F.4th 1115 at 1130-31. Further, the Eleventh Circuit unambiguously recognized *Garcetti* was "controlling," and evaluated the speech at-issue in *Warren* under the *Garcetti* doctrine despite its "skepticism" of its applicability to elected officials' speech. *Id*. at 1129 ("On the one hand, *Garcetti*'s application to elected officials *seems suspect*. On the other—*controlling*—hand, even if we apply *Garcetti* to Warren, the First Amendment still protects Warren's signing the statements") (emphasis added).  Notwithstanding this,

---

[1] It is also worth noting the Eleventh Circuit recently issued an Order withholding mandate upon a receipt of a Petition for Rehearing. Order Withholding Mandate (ECF No. 103-2), *Warren v. Desantis*, No. 23-10459 (11th Cir. Feb. 5, 2024).

2

the Eleventh Circuit's dicta regarding *Garcetti* was arguably case-specific.[2] Plaintiff's reliance on *Bond*, 385 U.S. 116, and *Wilson*, 142 S. Ct. 1253, is misplaced for similar reasons. *See supra* fn. 2.

Plaintiff's parroting of *Warren*'s suggestion that "the Supreme Court has crafted a First Amendment doctrine specifically for elected officials' speech" is equally misguided. *Warren* surmised that the Supreme Court created a "different standard" applicable to elected officials' speech because the Supreme Court's opinions in *Wood v. Georgia*, 370 U.S. 375 (1962) and *Bond*, 385 U.S. 116, "never relied on, nor even cited *Garcetti*." *Warren,* 90 F.4th 1115 at 1130. But why would they? Unlike the speech at-issue in *Warren* and this case, there was no dispute whether the speech in *Bond* and *Wood* was made in the elected officials' capacities as *private citizens*. Thus, the only logical explanation behind why the Supreme Court declined to "rely on or cite to" *Garcetti* in *Wood* or *Bond*, is that *Garcetti* simply could reasonably be invoked under the

---

[2] For example, according to the Eleventh Circuit, the speech at-issue in *Warren* amounted to an expression of the State Attorney's views on an issue of government "*policy*" and thus, the Eleventh Circuit speculated that cases like *Bond,* and *Wood v. Georgia*, 370 U.S. 375 (1962), might have been "more apt" in resolving whether Warren's speech was protected under the First Amendment. *Id.* at 1130-33 (citing *Bond*, 385 U.S. at 136) (emphasis added). The same cannot be said about the speech at-issue here, as Plaintiff's speech cannot reasonably be construed as statements "criticizing *public policy* [or] the implementation of it." *Bond,* 385 U.S. at 349 (emphasis added); *Compare* St. Johns County Government Television, *Nov 21, 2023 Board of County Commissioners* (Nov. 21, 2023), https://stjohnscountyfl.new.swagit.com/vid eos/281734 at (4:10:35 - 4:13:25) (attempting to persuade voters to "vote out" incumbent commissioners); *with Bond,* 385 U.S. at 132-33 (expressing opposition regarding national foreign policy in Vietnam, and the Selective Service system); *Warren,* 90 F.4th 1115 at 1132 (construing speech as expression of opinion regarding government policy); *Wilson*, 142 S. Ct. at 1261 (same). Further, unlike in *Warren* and *Bond*, there is no doubt that Plaintiff was speaking "pursuant to her official duties" when making her "speech" during the November 21, 2023, meeting of County Commissioners. *See generally e.g., Garcetti,* 547 U.S. at 421 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes.").

circumstances; Rather, the absence of *Garcetti* in those cases hinged on the fact that there was no dispute that the speech was not made "pursuant to" the speakers "official duties", not because the speech was attributable to an elected official.[3]

Finally, the Supreme Court's ruling in *Lindke v. Freed*, 601 U.S. 187, 196-202 (2024) further militates against Plaintiff's *Warren*-based "elected official" theory. In *Lindke*, the Supreme Court invoked *Garcetti* and similar "public employee" speech cases to evaluate whether an elected official was speaking in his capacity as a private citizen (and thus, engaging in speech protected under the First Amendment) when he blocked and deleted comments from constituents on Facebook. 601 U.S. at 196-97. In doing so, *Lindke* repeatedly and unambiguously referred to elected officials as "public employees." *See e.g., Id.* at 198 (referring to elected officials such as "Governors, mayors" as "state a local government *employees*") (emphasis added); *Id.* at 201-02 (discussing whether elected official's speech was in his official capacity, and explaining, "[i]f the *public employee* does not use his speech in furtherance of his official responsibilities, he is speaking in his own voice.")(emphasis added).

Although not expressly stated, the logical import of *Lindke* is that "public employees" and "elected officials" are to be treated as "one in the same" when it comes to contemplating the applicability of the First Amendment's protections to

---

[3] *Compare Warren,* 90 F.4th 1115 at 1131 (addressing dispute as to whether speech was made in Warren's "official capacity" or private capacity)*; with Bond* 385 U.S. at 345, 348 (no dispute plaintiff was speaking in his capacity as a "private citizen"); *Wood*, 370 U.S. at 393 (recognizing it was "uncontroverted" by the parties that "the statements were distributed by petitioner as a private citizen.").

4

official-capacity speech; and it makes all the sense to do so. Even though local state officials (like county commissioners) "enter[] government service" by means of election, they are nevertheless *public employees* in every sense of the word - they are hired by the public by means of an election with a mandate to work for the public, and they are paid from public coffers. *See Garcetti*, 547 U.S at 418 ( "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."). From this perspective, there is no basis for construing the term "public employees" to *exclude* elected officials like Plaintiff.

Thus, for all these reasons, this Court should not entertain Plaintiff's theory that *Garcetti* cannot apply to her speech because she is an "elected official", and find that her speech[4] is not protected under the First Amendment.[5]

## II.   *Younger* Abstention Applies.

Plaintiff cites to *Steffel v. Thompson*, 415 U.S. 452 (1974), to suggest that *Younger* abstention should not apply because "*Steffel* permits federal declaratory relief where,

---

[4] Including both Plaintiff's "speech" during the November 21, 2023, County Commissioner's meeting, and the speech Plaintiff has allegedly been "chilled" from engaging in (to the extent Defendant can assume such hypothetical "future speech" Plaintiff "intends" to engage in will be virtually identical to her November 21, 2023, speech in both form and substance). *See infra* 8-9.

[5] In the alternative, this Court should contemplate evaluating Plaintiff's speech under the "*Pickering* balancing test." *See Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cnty., Illinois,* 391 U.S. 563 (1968) (holding a government employee's First Amendment free speech claim is precluded when three elements are satisfied: (1) the employer's prediction of the disruption that such speech will cause is reasonable; (2) the potential for disruption outweighs the value of the speech; and (3) the employer took the adverse employment action not in retaliation for the employee's speech, but because of the potential for disruption). Plaintiff utilizing her position as County Commissioner to ask citizens of St. John's County to "vote out" her fellow commissioners during an official County Commissioner's meeting is the type of "disruption" warranting First Amendment preclusion under the *Pickering* balancing test.

as here, no state prosecution has been instituted." ECF No. 38 at 10. In other words, Plaintiff argues that abstention is precluded because *Steffel* recognizes a litigant can bring a pre-enforcement challenge; But the mere existence of claim under the pre-enforcement doctrine does not foreclose the applicability of federal abstention doctrines, and it certainly does not negate the Court's obligation to abstain under *O'Shea v. Littleton*. 414 U.S. 488, 501 (1974) (expressly admonishing federal intervention in cases seeking relief that would "disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim ab initio."); *See also* ECF No. 35 at 8-9 (establishing *O'Shea* abstention applies).

In the alternative, Plaintiff argues that the alleged "substantial hardship" on her speech, by itself, militates against abstention. ECF No. 38 at fn. 4 (citing *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1231 (11th Cir. 2006)). This is incorrect. For one thing, *Beaulieu* did not establish that making a showing of "substantial hardship" precludes federal abstention. 454 F.3d 1219 at 1231-32 (no reference or consideration to finding of "substantial hardship" when addressing abstention argument).  Still, even if a showing of "substantial hardship" alone were enough to preclude abstention in spite *O'Shea* (though it is not), the Complaint fails to establish Plaintiff has actually suffered, or imminently will suffer any "substantial hardship" to her First Amendment rights. *Compare Beaulieu*, 454 F.3d 1219 at 1230-31 (finding "substantial hardship" because "Beaulieu [demonstrated] a "*specific*, serious, and plausible" intent and desire to engage in conduct that arguably would violate the ordinance.") (emphasis added) *with* ECF No. 1 at ¶¶ 24, 25 (vague, generalized allegations regarding injury); ECF No. 35

at Section V(A) (explaining First Amendment inapplicable, Complaint lacks sufficiently specific allegations to establish First Amendment injury in-fact). Thus, Plaintiff fails to articulate any legal basis as to why this Court should not abstain on prudential grounds from deciding this case.

### III. Plaintiff Fails to State a Colorable First Amendment Claim.

The arguments Plaintiff asserts in her Response fall short of rebutting the many reasons why the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. First, Plaintiff's contention that she need not state with particularity the "where, when, and how" of her future speech to establish standing based on a "chilled speech" injury in-fact flies in the face of decades of well-established precedent.

Time and time again, Courts have routinely dismissed claims for lack of standing based on a "chilled speech" injury in-fact when a litigant does not *specifically* identify the speech they have censored themselves from engaging in; and with good reason.[6] Absent sufficiently specific allegations as to the "what, where, when, and

---

[6] *See e.g., LaCroix v. Lee Cnty., Florida,* 819 Fed. Appx. 839, 843 (11th Cir. 2020) (finding claimant lacked standing to bring pre-enforcement claim because they only "generally stated" and intent to engage in conduct arguably proscribed by the challenged law, and thus failed to allege ultimate facts of his intent to engage in future free speech activity "with the *requisite specificity* to demonstrate a substantial likelihood of future injury"); *Elend v. Basham,* 471 F.3d 1199, 1209 (11th Cir. 2006) (holding claimant lacked standing to bring pre-enforcement challenge because claimants did not allege, when, where, or how they would engage in the conduct arguably proscribed by the challenge law in the future, and because claimant otherwise failed to provide "a description of [their] past conduct from which to infer that they might act in a similar manner in the future"); *But see Holder v. Humanitarian Law Project,* 561 U.S. 1 (2010) (finding claimant had establishing standing to bring pre-enforcement challenge because claimants alleged ultimate facts that they specifically have engaged in conduct in violation of the challenged law in the past, they planned to engage in that some conduct again, individuals similarly situated to the claimant had already been prosecuted under the challenge law for engaging in the same conduct, and the Government declined to disavow prosecution if the plaintiffs continued to violate the law).

how" of the "chilled speech" at-issue, this Court cannot reasonably determine whether Plaintiff's desired "course of conduct" is "arguably affected with a constitutional interest", "proscribed by [§104.31]", or if "there exists a credible threat of prosecution under [§104.31]." *Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298 (1979).

To illustrate, Plaintiff seeks broad-sweeping *prospective* injunctive relief as to unspecified "speech" she hypothetically may engage in at some undisclosed point *in the future*. *See* ECF No. 38 at 3; ECF No. 1 at 10; *See also* ECF No. 35 at 11-12 (establishing Plaintiff's request for declaratory relief is actually a request for injunctive relief). However, Plaintiff's "cause of action is based on only one transaction or occurrence: Commissioner Joseph's speech [at the November 21, 2023, County Commissioner's Meeting]" and her subjective belief that she may be prosecuted under Section 104.31, Florida Statutes ("§104.31") for *that same speech*. ECF No. 38 at 18.

Does this mean Plaintiff is contending she intends to "speak" the exact same message in the exact same manner as she did on November 21, 2023, in the future, and thus faces a credible threat of prosecution for the same? Or perhaps is it that Plaintiff contends that the events that took place after her November 21, 2023, speech, somehow translates into a "credible threat of prosecution" for future speech made under completely different circumstances?  The Complaint does not tell.

Either way, absent any specificity as to its form and substance, this Court cannot determine whether the conduct Plaintiff has allegedly been chilled from engaging in is, in fact, "arguably affected with a constitutional interest." Nor can it determine

8

whether that same conduct is actually "proscribed" by §104.31.[7] More importantly, this Court cannot evaluate whether Plaintiff's alleged "threat of prosecution" under §104.31 is "objectively reasonable" (and therefore *credible*). *See e.g., Elend*, 471 F.3d at 1211–12 ("[I]t would *strain credulity* to say that there is a credible threat that Plaintiffs' First Amendment rights will be violated in the future ... [when] we don't know *when* they will protest, we don't know *where* they will protest, and we don't know *how* they will protest.")(emphasis added).[8]

Notwithstanding this, the Response also fails to rectify the Complaint's failure to assert sufficient *facts* to demonstrate that Plaintiff faces a *credible* threat of prosecution.[9] Reciting the boilerplate, vague, allegations in the Complaint, and

---

[7] It is worth noting Plaintiff alleges that §104.31 *itself* does not proscribe protected speech, but rather that §104.31 *might be improperly applied* to proscribe protected speech. ECF No. 1 at ¶¶ 26, 27. Plaintiff cannot establish Article III standing based on a "chilled speech" injury in-fact under this theory. *See e.g., Legacy Entm't & Arts Found., Inc. v. Mina*, 6:21-CV-698-PGB-DCI, 2021 WL 4444688, at *5-6 (M.D. Fla. Aug. 20, 2021) (holding plaintiffs who "[did] not argue that the statute itself improperly penalize[d] protected speech, but that the Statute will be improperly *applied* to penalize protected speech" could not establish standing based on "chilled speech" injury in-fact, and that "the potential for [unconstitutional] application of a facially neutral law cannot be litigated ex ante.") (citing *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002).

[8] Additionally, if Plaintiff "fears prosecution" for speech she might engage in at some point in the future, then how is State Attorney Kramer the proper Defendant to this action? *See e.g.,* ECF No. 35 at fn. 10 (State Attorney Kramer is improper party for claims unrelated to November 21, 2023 incident). Alternatively, if Plaintiff only "fears prosecution" for her November 21, 2023, speech, how could *prospective* relief insulating her from criminal liability for hypothetical future speech redress her alleged fear of prosecution? *See Id.* Neither the Complaint or the Response answer these questions.

[9] In simplest terms, when a claimant does not allege they or someone similarly situated were *actually* prosecuted or threatened with prosecution (i.e – told by a *law enforcement officer* they would affirmatively be arrested) for the engaging in the same speech they are now censoring themselves from engaging in, the "credible threat of enforcement" prong can only be satisfied if the Complaint asserts some other "*objective*" facts that supports a showing that Plaintiffs' fear of prosecution for engaging in the speech and conduct they are censoring themselves from is "*reasonable*" (and therefore *credible*). *See e.g., ACLU v. The Florida Bar*, 999 F.2d 1486, 1494 & n.13 (11th Cir. 1993) (explaining that a plaintiff

9

otherwise asserting new "facts" not alleged in the Complaint, is wholly insufficient to satisfy this burden. *See* ECF No. 38 at 11-12; ECF No. 35 at 17-18 (discussing requirements for establishing credible threat of prosecution).[10] Likewise, misconstruing Defendant's abstention arguments, and stacking inferences upon inferences to assert a far-attenuated theory that "state authorities *may* be willing to pursue a prosecution of Commissioner Joseph on an *aggressive interpretation* of the statue" is also unavailing. ECF No. 38 at 11-14 (emphasis added); *See Link v. Diaz,* 669 F. Supp. 3d 1192, 1203 (N.D. Fla. 2023) (holding fear of prosecution based on "chain of inferences" insufficient to show self-censorship was reasonable); *supra* fn. 7.

Second, Plaintiff's post-hac attempt at characterizing her pre-enforcement challenge as an "as-applied" challenge to circumvent her fatal concession that §104.31 *can* be constitutionally applied, does not save her case.[11]  "An as-applied First

---

must have an *objectively reasonable* belief about the likelihood of disciplinary action in order to bring a claim based on a "self-censorship" injury in-fact)(emphasis added).

[10] Plaintiff cannot amend her complaint through a response to a motion to dismiss. *See e.g., McKally v. Perez*, 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015) ("[A] complaint may not be amended by briefs in opposition to a motion to dismiss") (citations omitted). Correspondingly, this Court should disregard Plaintiff's arguments to the extent they rely on new "facts", allegations, or causes of action, that were not originally asserted in the Complaint.

[11] There is virtually no indication in the Complaint that Plaintiff is bringing a constitutional challenge to §104.31, let alone an *as-applied* challenge. *See* ECF No. 1 at ¶ 26 (**unambiguously stating that Plaintiff *was not* challenging the constitutionality of §104.31**); *supra* fn. 10. Thus, Plaintiff's post-hac "clarification" regarding the "as-applied" nature of her claim(s) further emphasizes the Complaint's egregious failure to place Defendant on notice of the claim(s) brought against him. *See* ECF No. 35 at Section III. Additionally, because Plaintiff is now challenging the constitutionality of a §104.31, Defendant notes Plaintiff must file a Notice of Constitutional challenge pursuant to Rule 5.1, Federal Rules of Civil Procedure. Rule 5.1 notice is required so the Court may certify the issue, and the appropriate parties may be notified and intervene if they so choose.

Amendment challenge contends that a given statute or regulation is unconstitutional *as it has been applied to* a litigant's particular speech activity." *See e.g., McDonough v. Mata*, 489 F. Supp. 3d 1347, 1359 (S.D. Fla. 2020) (emphasis added). As cogently explained by the 11th Circuit in *Bankshot Billiards*, a pre-enforcement challenge (i.e – a challenge to a law before it has been enforced against the claimant), by its very nature is a challenge to a law that *has not yet been applied to* (i.e. – enforced against) the claimant. 634 F.3d 1340, 1350 (11th Cir. 2011). Thus, a *pre-enforcement* vagueness challenge based on a "chilled speech" injury in-fact cannot logically be brought on an *as-applied* basis. *See also, supra* fn. 7. Plaintiff cannot circumvent this incontrovertible legal fiction by asserting misguided, cherry-picked, excerpts from various pre-enforcement cases.[12]

Regardless, even though Plaintiff now declares she is challenging §104.31 "as-applied," this Court should nevertheless treat her claim as a facial challenge to §104.31 in light of the principles explained above, and because Plaintiff's requested relief is arguably facial in nature. *See e.g., Harrell v. The Fla. Bar,* 608 F.3d 1241, 1259 (11th Cir. 2010) (holding courts are "not bound by [Plaintiff's] designation of [her] claims, and [must] look to the complaint to determine what claims, if any, [her] allegations

---

[12] ECF No. 38 at 19-20 (misconstruing excerpts from *McDonald v. City of Pompano Beach,* 556 F. Supp. 3d 1334, (S.D. Fla. 2021), *Robinson v. A.G.*, 957 F.3d 1171 (11th Cir. 2020), and *Steffel v. Thompson*, 415 U.S. 452, 8 475 (1974) to suggest litigants can bring as-applied, pre-enforcement vagueness challenge under First Amendment); *McDonald,* 556 F. Supp. 3d at 1345 (generally recognizing litigant need not be prosecuted to have standing to bring a pre-enforcement challenge, no indication litigant can bring as-applied vagueness pre-enforcement challenge under First Amendment); *Robinson,* 957 F.3d 1171 at 1177 (as-applied challenge brought based on alleged due process violation); *Steffel,* 415 U.S. 452 at 475 (no indication litigant can bring as-applied pre-enforcement vagueness challenge under First Amendment).

11

support."); *Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1329 (11th Cir. 2001) ("A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation *itself*.") (emphasis added); *See* ECF No. 1 at 10 (requesting broad-sweeping declaration immunizing Plaintiff from liability under virtually any statute that governs public employees' speech in the elections context).

## CONCLUSION

WHEREFORE, for all the reasons set forth herein, Defendant, BRIAN S. KRAMER, in his official capacity as State Attorney for the Eighth Judicial Circuit of Florida, hereby respectfully requests this honorable Court dismiss the Complaint.

Dated: May 1, 2024                                                          Respectfully submitted,

/s/ *Emily J. Witthoeft*
EMILY J. WITTHOEFT
Florida Bar No. 1039542
ASSISTANT ATTORNEY GENERAL
P: (850) 414-3669
emily.witthoeft@myfloridalegal.com
*Lead Counsel*

/s/ *William H. Stafford III*
WILLIAM H. STAFFORD III
Florida Bar No. 70394
SPECIAL COUNSEL
P: (850) 414-3785
william.stafford@myfloridalegal.com

Office of the Attorney General
Complex Litigation Bureau
The Capitol, PL-01
Tallahassee, Florida, 32399-1050

**Counsel for State Attorney Kramer**