UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KRISTA JOSEPH, St. Johns County
Commissioner,
    Plaintiff,

v.                                       Case No. 3:24-cv-35-HES-PDB

BRIAN S. KRAMER, State Attorney
for the Eighth Judicial Circuit of
Florida,
    Defendant.
_____/

## O R D E R

This matter is before this Court on an "Emergency Motion for Preliminary Injunction" (Dkt. 51) and "Defendant's Response in Opposition to Plaintiff's Emergency Motion for Preliminary Injunction and Incorporated Memorandum of Law" (Dkt. 64).

The circumstances of this case have two fundamental freedoms that are placed in jeopardy—the right to vote and the right to express oneself. Most citizens participate in government not as a military or civilian employee, or a juror, or an elected official but by exercising their right to vote. The Supreme Court has long recognized both the right of a citizen to cast their vote and to discuss that vote. *See Baker v. Carr*, 369 U.S. 186 (1962) (teaching, "A citizen's right to a vote free of arbitrary impairment by state action has been judicially

recognized as a right secured by the Constitution, when such impairment resulted from dilution by a false tally, or by a refusal to count votes from arbitrarily selected precincts, or by a stuffing of the ballot box . . . .") (internal citations omitted).

The late Justice Scalia once spoke eloquently about the merits of the First Amendment. He said,

> One need look only as far as the American Bill of Rights, which reads like a veritable laundry list of ways in which American values—primarily legal values—have differed from their European counterparts. The First Amendment, often considered by Americans to be the proverbial jewel in the crown that is the U.S. Constitution, staunchly defends freedom of speech. Americans have proven themselves to be willing to protect that freedom against all manner of detractors; willing to display the thick skin the First Amendment requires, and to recognize that the right to speak is far more important than a right not to be offended by what is spoken. Thus, when the Nazi Party of America planned to march through the streets of Skokie, Illinois, in 1977, its right to do so was supported by the American Civil Liberties Union and protected by the courts despite the repugnancy of its message.
> To be sure, Europeans also value the freedom of speech and its importance to a functioning democracy. But they are far more willing to suppress a speaker's message when it might prove inflammatory to the populace at large, or even when it might be thought to erode national culture.

Antonin Scalia, Scalia Speaks: Reflections on Law, Faith, and Life Well Lived 30-31 (Christopher J. Scalia & Edward Whelan eds., 2017).

Simply because a person is an elected official, such as a County Commissioner, this rightful freedom to speak out so as to inform the electorate cannot be restricted.

Indeed, a little more than a month ago, the Supreme Court reaffirmed one of the foundational ideas of our nation—the First Amendment. The Court explained, "Six decades ago, this Court held that a government entity's threat of invoking legal sanctions and other means of coercion against a third party to achieve the suppression of disfavored speech violates the First Amendment. Today, the Court reaffirms what it said then: Government officials cannot attempt to coerce private parties in order to punish or suppress views that the government disfavors." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 180 (2024) (internal citations and quotations omitted). Simply because a person is an elected official, such as a County Commissioner, their rights cannot be restricted from suggesting how people vote.

I.

In November 2023, Commissioner Krista Joseph made a speech arguably touching on political matters regarding an upcoming election. What put these statements at issue was the fact that she made this speech during her allotted time in a meeting of the Board of County Commissioners. She voted one way and all the other Commissioners another way. This led to her comment that

the other Commissioners should not be re-elected. Her colleagues on the board censured her and engaged outside counsel to analyze whether her comments violated the law. Outside counsel concluded her comments violated § 104.31(1), Florida Statutes, and noted the matter could be referred to the state attorney for consideration of criminal charges.

Commissioner Joseph sued in January 2024 seeking a declaratory judgment, as to whether she "has a right protected by the First Amendment to the United States Constitution to make her political views known to the citizens of St. Johns County in connection with the primary election scheduled for August 2024, including her preference that voters vote out incumbent commissioners, in contexts in which she is identified as holding the position of county commissioner," without violating § 104.31(1)(a). Commissioner Joseph sued the Board of County Commissioners and the state attorney, who is the local prosecutor. The Board of County Commissioners finally concluded that state law did not criminalize her speech, and Commissioner Joseph voluntarily dismissed the board as a defendant.

Originally, R.J. Larizza, State Attorney for the Seventh Judicial Circuit, (State Attorney Larizza), retained jurisdiction over the allegations against Commissioner Joseph, and was named as a Defendant here. But on February 16, 2024, because of a conflict of interest on behalf of State Attorney Larizza,

the Governor issued an Executive Order transferring the task of investigating allegations that Commissioner Joseph violated the Florida Election Code during the November 21, 2023, County Commissioner's Meeting, to State Attorney Kramer. Defendant was later involuntarily substituted into this action at Commissioner Joseph's request.

On April 10, 2024, Defendant filed an Amended Motion to Dismiss, making three arguments: (1) the Complaint was an improper shotgun pleading for failing to place Defendant on notice of the claims brought against him; (2) *Younger* abstention was necessary; and (3) the Complaint lacked enough factual allegations to state a claim for injunctive or declaratory relief, and otherwise did not show the existence of an actionable Article III case or controversy.

On May 29, 2024, this Court held a Preliminary Pretrial Conference. During the conference, Defendant represented he would be impaneling a grand jury to decide whether Commissioner Joseph should be criminally prosecuted under § 104.31(a) for her speech made during the Commission Meeting.

Commissioner Joseph then filed an Emergency Motion for Preliminary Injunction. A day later, this Court denied her request for emergency treatment.

Also on that day, this Court issued a separate order denying the Amended Motion to Dismiss. (Dkt. 55.) This Court summarily found the

5

Complaint was not a shotgun pleading, but did not rule on the remaining arguments asserted in the Amended Motion to Dismiss because, "given the events of the May 29, 2024 hearing," the remaining arguments "no longer accurately reflect the issues pending here." (*Id.*). This Court let Commissioner Joseph amend her Complaint, but she declined.

II.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Its purpose "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A Court will "consider four factors when determining the propriety of preliminary injunctive relief: (1) whether the plaintiff has a substantial likelihood of success on the merits of its claim; (2) whether the plaintiff will suffer irreparable harm in the absence of relief; (3) the balance of the equities; and (4) the public interest." *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 775 (11th Cir. 2024).

The first factor requires "only likely or probable, rather than certain, success." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). The last two factors "merge when the [g]overnment is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

6

A request for injunctive relief "should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001). *See Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001) (explaining that if a party fails on one prong of the injunction standard, district courts need not consider the other three, and the request must be denied). Additionally, "preliminary injunctions of legislative enactments . . . must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990).

### A.

Here, Commissioner Joseph moves for a preliminary injunction prohibiting State Attorney Kramer from instituting a criminal prosecution against her under § 104.31(1) based on traditional political speech.

The statute provides,

> (1) No officer or employee of the state, or of any county or municipality thereof, except as hereinafter exempted from provisions hereof, shall:
>
> (a) Use his or her official authority or influence for the purpose of interfering with an election or a nomination of office or

> coercing or influencing another person's vote or affecting the result thereof.

Fla. Stat. § 104.31.

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws abridging the freedom of speech." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (quoting U.S. Const., Amdt. 1). Based on the First Amendment, "a government, including a municipal government vested with state authority, has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* Importantly, "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* Although the First Amendment says no law shall be made "abridging the freedom of speech" that prohibition is not absolute. For example, the most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic. *Schenck v. United States*, 249 U.S. 47, 52 (1919).

The statute under which State Attorney Kramer intends to prosecute Commissioner Joseph makes it a crime for a county officer to "[u]se . . . her official authority or influence for the purpose of interfering with an election . . . or coercing or influencing another person's vote or affecting the result thereof." § 104.31(1)(a).

This statute sets up a content-based restriction on its face. If the speaker expresses a message, say, of holiday greetings, the speech is acceptable. But if the speaker expresses a message urging voters to vote in some way, the speech is prohibited. Section 104.31 draws distinctions based on message and is content-based.

The statute also criminalizes speech based on its effect on the listener—that is the ability of the speech to influence a voter to vote in some way. For this reason too, the speech restriction must be considered content-based. *See Boos v. Barry*, 485 U.S. 312, 321 (1988) (finding restriction on picketing in front of embassies was content-based because it was justified by the need to protect foreign diplomats from critical speech, and regulation of speech due to its impact on audience must be considered content-based).

As a content-based restriction on speech, §104.31(1) is presumptively unconstitutional and can stand only if it survives strict scrutiny. *Reed*, 576 U.S. at 171. This "requires the Government to prove that the restriction

9

furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* (internal quotation marks omitted).

State Attorney Kramer has articulated no compelling interest here. Nor can he. The Supreme Court has made it clear that elected officials may speak freely on political topics and has rejected interests that assertedly justify curtailing that right. *See Wood v. Georgia*, 370 U.S. 375, 376–80 (1962). The Supreme Court was presented with an elected sheriff who publicly criticized a grand jury investigation into a particular matter touching on politics and then delivered to the grand jury a letter advising the grand jury to investigate a different matter touching on politics. *Id.* The sheriff was held in contempt. *Id.* at 380. The state sought to justify the action by its interest in protecting the administration of justice. *See id.* at 388 ("Thus we have simply been told . . . that if a State is unable to punish persons for expressing their views on matters of great public importance when those matters are being considered in an investigation by the grand jury, a clear and present danger to the administration of justice will be created.").

But the *Wood* Court rejected that interest, finding that the only risk to the administration of justice shown by the record was "precisely one of the types of activity envisioned by the Founders in presenting the First Amendment for ratification." *Id.* "Those who won our independence had

10

confidence in the power of free and fearless reasoning and communication of ideas to discover and spread political truth." *Id.* If the sheriff's statements had "errors in judgment or unsubstantiated opinions," the proper correction was counterargument, not use of the contempt power to silence him. *Id.* at 389. The sheriff's "attack on the charge to the grand jury would have been likely to have an impeding influence on the outcome of the investigation only if the charge was so manifestly unjust that it could not stand inspection." *Id.* at 391. Essentially, the Court found the state had no legitimate interest in protecting the grand jury from being informed of the sheriff's opinions on the matter they were investigating.

The state also sought to justify a restriction on the sheriff's speech by the sheriff's special duty and responsibility to the court and its judges. *Id.* at 393. The Supreme Court rejected that interest absent evidence that the sheriff's speech somehow interfered with his duties as sheriff. *Id.* at 394. The Court explained:

> We are not dealing with a situation where a sheriff refuses to issue summonses or to maintain order in the court building; nor, so far as the record shows, did the petitioner do any act which might present a substantive harm to the jury's solution of the problem placed before it. We are dealing here only with public expression.

*Id.* at 394. The Court concluded, "The role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." *Id.* at 395.

In *Bond v. Floyd*, the Supreme Court addressed the matter of a would-be state legislator whom the legislature would not seat because of his public statements against the Vietnam War and the draft. 385 U.S. 116 (1966). The state argued that the would-be legislator's public statements contradicted the oath required to take office. *Id.* at 123–25. The Supreme Court explained that the requirement to take an oath could restrict a legislator's speech. *Id.* at 132. The state sought to justify such a restriction by its interest in ensuring the loyalty of its legislators. *Id.* at 135. The Court acknowledged the interest in loyalty but rejected it as a justification for restricting speech: "while the State has an interest in requiring its legislators to swear to a belief in constitutional processes of government, surely the oath gives it no interest in limiting its legislators' capacity to discuss their views of local or national policy." *Id.*

The Court concluded with a discussion of the importance of legislators being free to discuss political matters:

> The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy. . . . The interest of the public in hearing all sides of a public issue is hardly advanced by extending more protection to citizen-critics than to legislators.

12

> Legislators have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them, and be better able to assess their qualifications for office; also so they may be represented in governmental debates by the person they have elected to represent them.

*Id.* at 136–37.

Section 104.31(1)—at least as interpreted by State Attorney Kramer as the basis for his intended criminal prosecution of Commissioner Joseph—is a content-based restriction on speech. Thus, it is presumptively unconstitutional, and as said before, cannot stand unless it is narrowly tailored to serve a compelling government interest. Considering the Supreme Court's teaching, as detailed above, § 104.31(1) is not narrowly tailored to serve a compelling government interest. Commissioner Joseph has a substantial likelihood of success on the merits of her First Amendment challenge to the threatened prosecution.

<div style="text-align:center">B.</div>

"The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord Roman Cath. Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020). The threatened prosecution is chilling Commissioner Joseph's political speech in the last months of the primary election when this speech is most meaningful. If preliminary injunctive relief is not issued, Commissioner Joseph will have

irretrievably lost the opportunity to participate in the political conversation for this election.

C.

The harm to Commissioner Joseph from the threatened prosecution outweighs any harm to State Attorney Kramer from an injunction. The threatened prosecution is now chilling Commissioner Joseph's political speech and preventing her from participating actively in this primary election. This is a significant harm. An injunction, however, is only a minimal harm to State Attorney Kramer.

D.

State Attorney Kramer asks this Court to abstain from hearing this case because the dispute justifies invocation of the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971).

In *Younger*, the Supreme Court held that a federal court should decline to enjoin a state criminal prosecution, except in extraordinary circumstances. *Id.* at 53. "The policy of equitable restraint expressed in *Younger v. Harris*, in short, is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975).

Under the *Younger* abstention doctrine, a federal court may not interfere

14

with or enjoin a pending or ongoing criminal proceeding. *Sprint Comm'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) (citations omitted).

But the *Younger* doctrine does not apply here because there is no pending or ongoing criminal investigation. As State Attorney Kramer explained in a declaration to this Court,

> It is incumbent upon me to bring the question of whether Krista Joseph should be prosecuted under section 104.31, Florida Statutes, for the speech she made during the November 21, 2023, meeting of the St. John's County Board of County Commissioners, before the St. Johns County Grand Jury.
> Upon a proper presentment, the St. Johns County Grand Jury could do any of the following:
> (i). Indict Commissioner Joseph for a violation of section 104.31, Florida Statutes;
> (ii). Issue a report detailing Commissioner Joseph's conduct and therein determine that her conduct was malfeasance or misfeasance in office;
> (iii). Direct the issuance of that report to the Governor of the State of Florida and / or the Florida Commission on Ethics for potential further action; or
> (iv). Issue a No True Bill.

(Dkt. 65-1.)

As this declaration makes clear, there is no pending, state criminal prosecution so there is no *Younger* doctrine issue. *See Westin v. McDaniel*, 760 F. Supp. 1563, 1567 (M.D. Ga.), aff'd, 949 F.2d 1163 (11th Cir. 1991) ("The lesson to be drawn from these decisions is that a federal plaintiff, faced with a

15

threatened, but not pending, state criminal prosecution may obtain a preliminary injunction from a federal court barring such a prosecution free from the obstacle presented by the *Younger* doctrine and its federalism concerns, if he can meet the equitable requirements for such relief.").

Accordingly, this Court declines the state attorney's invitation because the *Younger* abstention doctrine applies only where a state criminal proceeding was instituted before the federal case was filed, and here, no state criminal prosecution was pending when Commissioner Joseph filed this case. Nor are any pending now.

### III.

The First Amendment is a "constitutional safeguard" that has been "fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269–70 (1964). What is more, "It is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions, and this opportunity is to be afforded for vigorous advocacy no less than abstract discussion. *Id.* at 70 (internal citations and marks omitted).

Just last week our Great Nation celebrated the signing of the Declaration of Independence on July 4, 1776, and its 248th Birthday. That document stated

why this new country was being formed and listed grievances including the curtailments of freedom and rights imposed on the colonies by the King of England. In 1789, our Founders drafted, and the colonies ratified our Constitution. Then in 1791 our Constitution was amended to include the Freedom of Speech embodied in the First Amendment. This was due in large part to function as a bulwark against government overreach. As James Madison, one of our Founding Fathers, expressed in Federalist No. 51: "In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself." The Federalist Papers 322 (1961).

This Court also is reminded of Justice Benjamin Cardozo's observation, made over a century ago: "The judge . . . is not a knight-errant roaming at will in pursuit of his own ideal of beauty or of goodness." Benjamin N. Cardozo, *The Nature of the Judicial Process*, 141 (1921). This Judge is not a knight errant roaming at will but only following the consecrated law in protecting the cherished right of freedom of speech. The primary election is barely a month away so this Court must enjoin the state attorney from trying to obtain criminal charges for someone exercising a First Amendment right especially about an election issue. Just because the speech occurred at a County

Commission meeting does not mean a County Commissioner loses her First Amendment rights.

Accordingly, it is **ORDERED**:

The "Emergency Motion for Preliminary Injunction" (Dkt. 51) is **GRANTED**; and

2. This Court enters a preliminary injunction prohibiting State Attorney Kramer from instituting, maintaining, or prosecuting any criminal proceeding against Commissioner Joseph under § 104.31(1), Florida Statutes, if such proceeding is founded on political speech by Commissioner Joseph.

**DONE AND ENTERED** at Jacksonville, Florida, this 10th day of July 2024.

_____
HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

Copies to:
William Bradley Russell, Jr, Esq.
Emily J Witthoeft, Esq.
William H. Stafford, Esq.